# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**JAMIE C. WOODS**
**PHILLIP A. GARRETT**
Thorne & Grodnik, LLP
Mishawaka, Indiana



**FILED**

Mar 20 2014, 9:15 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HERITAGE ACCEPTANCE CORPORATION, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1307-SC-283 |
| | ) | |
| CHRIS L. ROMINE, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Richard L. McCormick, Magistrate Judge
Cause No. 71D01-1304-SC-3127

**March 20, 2014**

**OPINION - FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

Heritage Acceptance Corporation ("Heritage") appeals a small claims court judgment in favor of Chris L. Romine. We affirm.

## ISSUES

Heritage raises two issues, which we restate as:

I. Whether a four-year or six-year statute of limitations applies to Heritage's complaint.

II. Whether the statute of limitations bars Heritage's complaint.

## FACTS AND PROCEDURAL HISTORY

On September 30, 2005, Romine bought a 1996 Pontiac Firebird from Royal Motors. Romine and Royal Motors executed a "Retail Installment Contract and Security Agreement." Plaintiff's Ex. 1. The contract provides, "You [Romine] agree to purchase from us [Royal Motors], on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the Motor Vehicle (Vehicle) and services described below." *Id.*

Romine agreed to pay a total of $11,097.32 for the car, including finance charges. He further agreed to pay in seventy-eight installments of $133.94, beginning on October 15, 2005, and payable on a biweekly basis. The contract stated that Heritage would be Royal Motors's assignee.

The contract further provided that if Romine defaulted on his payments, Royal Motors or its assignee had the following option:

2

A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

\* \* \* \*

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

Plaintiff's Ex. 1.

Romine paid the required amount to Heritage on a biweekly basis until June 2006. Beginning in that month, Romine continued to make payments, but in amounts far less than the required $133.94. He sometimes paid as little as $10.00 because he had suffered a severe back injury and was unable to maintain employment. Romine's last payment was in May 2007. He stopped making payments because a Heritage employee told him "they weren't going to accept" $10 or $20 anymore. Tr. p. 9. Heritage never tried to repossess the car, but it retained the certificate of title.

In early April 2013, a representative of Heritage contacted Romine and demanded payment of the entire amount owed. Romine said he could not pay that amount all at once.

On April 17, 2013, Heritage sued Romine in small claims court, seeking $6,000.00 (the court's jurisdictional limit) plus court costs. After an evidentiary hearing, the court entered judgment for Romine. The final judgment states, "Statute of limitations – action not commenced within 4 yrs after cause of action accrued." Appellant's App. p. 5. The court further granted Romine ownership of the Pontiac. This appeal followed.

3

DISCUSSION AND DECISION

A small claims court's judgment "shall be subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Where the issue on appeal is a pure question of law, we review the matter de novo. *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 828 (Ind. 2011). The determination of when a cause of action accrues is generally a question of law. *Warrick Cnty. v. Hill*, 973 N.E.2d 1138, 1143 (Ind. Ct. App. 2012), *trans. denied*.

We observe that Romine did not file an appellee's brief. Under such a circumstance, we do not develop arguments on his behalf, and we reverse if Heritage demonstrates prima facie error in the small claims court's judgment. *Heartland Crossing Found., Inc. v. Dotlich*, 976 N.E.2d 760, 762 (Ind. Ct. App. 2012). Prima facie error means at first sight, on first appearance, or on the face of it. *Id.*

## I. WHICH STATUTE OF LIMITATIONS APPLIES?

The small claims court determined that the contract was subject to a four-year statute of limitations pursuant to Indiana Code section 26-1-2-725 (1986). That statute provides, "An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued." *Id.* This four-year statute of limitations applies to "transactions in goods." Ind. Code § 26-1-2-102 (1991). "It does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction." *Id.*

Here, Heritage claims that the applicable statute of limitations is six years, as set forth in Indiana Code section 34-11-2-9 (1998). According to that statute, "An action

4

upon promissory notes, bills of exchange, or other written contracts for the payment of money . . . must be commenced within six (6) years after the cause of action accrues." *Id.*

In deciding which deadline applies, we note that when a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their ordinary sense. *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007). Here, the clear and unambiguous language of Indiana Code section 26-1-2-102 provides the key to determining which statute of limitations applies. We must decide whether the contract at issue was "intended to operate only as a security transaction." If so, then the four-year statute of limitations set forth in Indiana Code section 26-1-2-725 does not apply.

The contract is captioned "Retail Installment Contract and Security Agreement." Plaintiff's Ex. 1. It provides, "You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the Motor Vehicle (Vehicle) and services described below." *Id.* Heritage concedes that the contract resulted "in a sale of goods." Appellant's Br. p. 5. Indeed, the financing aspect of the contract is wholly dependent upon the sale of the car, because without the sale, the financing serves no purpose.

Thus, although the transaction has aspects of a contract for payment of money, it is not exclusively a security transaction. Under Indiana Code section 26-1-2-102, the contract is a transaction for goods. *See First Nat. Bank of Milltown v. Schrader*, 176 Ind. App. 391, 375 N.E.2d 1124, 1125 (1978) (a retail installment contract for sale of a used

5

automobile was a transaction for sale of goods); *Thompson Farms, Inc. v. Corno Feed Prods.*, 173 Ind. App. 682, 366 N.E.2d 3, 14 (1977) (appellee sold hog houses to appellant while also providing financing, so the parties' contract was a transaction for sale of goods). Thus, Heritage's complaint was an action for a breach of contract for sale, and the four-year statute of limitations set forth in Indiana Code section 26-1-2-725 applies.

II. DOES THE STATUTE OF LIMITATIONS BAR HERITAGE'S CLAIM?

Heritage next claims that even if the four-year statute of limitations applies, it still timely filed its complaint. "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Ind. Code § 26-1-2-725(2). However, where, as here, an installment contract contains an optional acceleration clause, by which the creditor may declare all installments in the loan immediately due and payable after default, the statute of limitations to collect the entire debt does not begin to run immediately upon the debtor's default. *Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1160 (Ind. Ct. App. 2010). Instead, the statute generally begins to run only when the creditor exercises the optional acceleration clause. *Id.*

*Smither* provides guidance here. Smither obtained a credit card from a bank. He ran up a debt of $1700 and stopped making payments in February 2000. The bank continued to send him monthly billing statements. In December 2001, Asset Acceptance, LLC ("Asset"), purchased the loan from the bank. In May 2006, Asset requested full payment of the debt under the contract's optional acceleration clause and sued Smither.

6

Asset ultimately prevailed on summary judgment, and Smither appealed. A panel of this Court noted that the contract had an optional acceleration clause, and Asset did not exercise the clause until May 2006, by which time Smither had been in default for over six years and the statute of limitations had run. The Court stated, "Waiting until after the statute of limitations has passed following default before making demand for full and immediate payment of a debt is per se an 'unreasonable' amount of time to invoke an optional acceleration clause and cannot be given effect." *Id.* at 1161-62. The Court also noted, "'a party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand.'" *Id.* at 1161 (quoting *Curry v. United States*, 679 F. Supp. 966, 970 (N.D. Cal. 1987)). Thus, the Court concluded that Asset's long-delayed exercise of the acceleration clause did not prevent the statute of limitations from taking effect.

Here, Heritage waited until early April 2013 to exercise its right to demand full payment under the optional acceleration clause. Romine had tendered his last payment almost six years earlier. Furthermore, Romine's schedule of seventy-eight biweekly payments would have ended in September 2008. Heritage did not demand full payment until well over four years after that deadline. We conclude, as did the Court in *Smither*, that waiting after these events have occurred to exercise an optional acceleration clause is unreasonable. Thus, Heritage's long-delayed attempt to exercise the acceleration clause did not prevent the four-year statute of limitations from taking effect, and its complaint is barred. Heritage has failed to establish prima facie error.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the small claims court.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.